May it please the court, my name is Michael Cernyar. I represent Mr. Christopher Osinger. I'm going to reserve five minutes for rebuttal. This case is about some inappropriate language, some crude remarks, probably some lewd conduct. Not lewd conduct, I'll strike that. But it's not criminal. This is a case about some words, some e-mails, some text messages that went from one ex-lover to another ex-lover. Well, more than that, more broadly than that. Yes. And also to some colleagues and friends. And relatives. And relatives. Okay. None of the letters or e-mails would be defined in the three narrow categories of speech. None were obscene, insightful, or fighting words. But how about the governing statute? Did those actions fall within, whether you agree or disagree about the validity of the statute, did the mailings fall within the language of the statute? It would depend on how narrowly you tailor that statute. Because we're talking about harassment. And we're talking about many times sometimes harassment is given a broader definition and sometimes a narrow definition. But counsel, as I understand it, your argument to us is not that there was insufficient evidence, but rather that the indictment has to go away because there's a constitutional infirmity with the statute under which he was convicted. Am I right or wrong about that? No, you're absolutely correct about that. Okay. So the answer to Judge Rawlinson's question would have to be that his acts did, for our purposes, violate the terms of the statute. And so then the question is whether that's a valid statute or not a valid statute. Correct? Correct. Okay. Okay. So. Well, let me ask you this then. I mean, you want to couch this obviously in terms of speech and wrap yourself in the First Amendment. But I guess what I see here is what I would characterize as conduct. It's just a campaign of terrorizing this particular victim. And I don't see why the First Amendment even comes into play with what your client did. Well, the First Amendment will come into play here because it's basically, it is speech. It is e-mails. It is communication. It is those things that went to her or her friends and her relatives. It's also about the vagueness of the statute itself. The statute itself says it has to be substantial emotional distress. You don't think that what your client did would be likely to cause someone, the recipient of his campaign of terror, to experience substantial or significant emotional distress? I would think, and this is my position, I would believe it depends on the particular victim. If you have victims and they're taking photographs of things many of us wouldn't take photographs of, then there has to be some assumption of risk that something is going to happen to those particular photographs. So what are you saying? Are you saying that the victim in this case took the photographs that were disseminated by the defendant? I believe in her testimony, and I think it was on page 88 and 89 of the transcripts on the day she testified, she mentioned that not only did she consent to some of the photographs, but she sent many of those photographs. She consented to some, but not the videos. There was no testimony about her consenting to the videos. And there was no video. There was a threat of a video that, you know, if you send me or respond to me, I'll send you a video. But we know of no video except the one that she. But there was reference to one, but there was no indication that she ever consented to videotaping any sex acts. Correct. She said that. She said the one video that she was aware of, she had seized herself and wanted to destroy it, but never destroyed it because she was afraid that she threw it out or whether somebody else would get it. Well, let me ask you this. You said in response to Judge Wofford's question that whether or not someone experienced a severe reaction, depending on the person, but doesn't the evidence reflect that she, in fact, did have a very serious reaction to these e-mails, that she was hysterical, was unable to work? Wouldn't you consider that to be a severe reaction? I wouldn't consider that a severe reaction, but it goes back to the individual of themselves. We have a subjective standard that's insensitized by the individual victims. There's no. I don't see why that makes any difference. It's no different than saying, you know, having theft statutes that have different punishments depending on the value of what you take. I mean, you may take a ring thinking it's worth $50 and it's worth $50,000. You may have a victim, one victim who thinks it's amusing and doesn't complain about it, and another victim who is severely traumatized. So, I mean, isn't that ‑‑ I guess I'm not really sure what that proves on your side. It is an element of the statute, and basically, yes, you can have one victim that says, hey, I don't care. That isn't this case. In this case, you have trauma by the person, and insofar as that's an element of the crime, it was proved. As far from the jury, correct. Okay. So she was, in fact, traumatized, and the statute also requires that it be the intent to cause substantial harm. So the jury also found that. So what you have here is actual harm, which was intended. And I don't know what's vague about that, and I don't know what's First Amendment protected about that. Well, I think the speech itself is protected. Well, we know that threats are not protected, for example. Just the fact that you use words does not say, King's X, you can't do anything about it. I mean, bribery, extortion, threats, there are a lot of crimes that involve the use of words. And I think this more falls in the category of defamation, and there are no statutes, criminal or civil, in defamation in federal court that I'm aware of. But we have a statute here, though. And that's the thing you have to contend with is the fact that we do have a statute. We're not talking about common law. We're talking about a specific statute that Congress has enacted. Right. And my argument here in this specific place, this statute is unconstitutional on two prongs. First is the speech. The speech is protected. The second part is the vagueness of the substantial emotional distress. That's never defined. And you don't have something, you have something where one victim, if you're going to define it that way, you have one victim that's a crime and another victim that's not a crime. Well, that's only because of the proof. It's not because of the statute. If you have one victim who's not concerned about it, then there's no substantial emotional distress. There may be no emotional distress at all, but that's a failure of proof. It's nothing to do with what's wrong with the statute. I think I strongly disagree with you. I think it has to do with the statute itself. The statute itself is not objective. Okay? It's not saying, okay, if you do these actions, you will definitely, it's definitely a crime. It's not saying that at all. It's not like your bank robbery. It's not like your theft that we were talking about. It is saying, hey, look, if you don't, if you go by these terms, it may be a crime on one victim. It may not be a crime on another victim. Counsel, are you aware that at least one other circuit has upheld the statute against a constitutional challenge? I believe, I believe I am aware of that, Your Honor. And so why should we part company with the other circuit that has said the statute is not unconstitutionally vague? I believe in that specific case the distinction here is. I'm talking about the Eighth Circuit. Petrovich or Alvarez, pronounced. I believe in that particular case what they're talking about is somebody that's actually physically moving around the country and physically doing other things that create threats. And in this case we don't have any specific threat other than the fact that here are these photographs of somebody that's sending them several thousand miles away. I guess I read the case quite differently. It seemed to me that the facts were quite similar. It involved sending postcards with the wife's or ex-wife's nude photographs and disseminating naked pictures with obnoxious comments. Very similar activities. Okay. Then I'm not aware of the case of that specific fact pattern. But let me get back to our argument here is the fact that these females are pretty much what are protected speech and also that it is vague in the fact that the substantial emotional distress can be anything. There's nothing in here that says what or how substantial emotional distress is defined. And with that, there's no really notice to anyone. Counsel, did you want to save some time for rebuttal? Yes, I did, Your Honor. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court. My name is Ryan White. I represent the United States. Judge Watford, I'd like to start with something that you said, which I think sort of hits at the heart of this. Not only is the statute directed of conduct, but this indictment was directed at a course of conduct intended to, under the indictment, harass or cause substantial emotional distress. Another way to say it might be to terrorize this victim. And Your Honors are well aware with the record here in the transcript, that's precisely what it did. This is not a victim who was, you know, just slightly sensitive. She talked about crying hysterically, being unable to work effectively for weeks. What's the definition of substantial emotional distress? I think opposing counsel's argument in part is, well, how is the alleged perpetrator to know what they're causing equates to substantial emotional distress or how what they're intending is to cause such distress? The court in Sayre, the district court in Maine, talked about how the term substantial emotional distress comes from state stopping statutes and how there's an abundance of case law discussing it. I think that it could potentially vary from case to case, but where the defendant intends to cause substantial emotional distress and actually does, and in this case it is causing her to be hysterical, causing her in both her private and professional capacities to be unable to operate for a period of time. Whatever the definition might be, and I think courts could come up with different definitions, I think without a doubt in this case that has been satisfied. And I think that also Judge Graber points out one of the critical elements of the statute, and we didn't really talk about it over breadth, but this gets to over breadth and a bit to vagueness, not only is it a course of conduct, not only does it require a specific intent to harass or cause substantial emotional distress, but also it has to effectuate those means, actually result in the harm to the victim. Courts, each of the terms that the defendant challenges here, substantial emotional distress, harass, course of conduct is actually defined in Section 2266 of Title 18. Each of them has been deemed by courts at the circuit level to be understandable by its plain meaning and also by reference to judicial decisions, dictionary definitions. I submit there's just simply no confusion, especially in this case. I could see perhaps on the fringes there being a case where it's unclear perhaps what a harassment might be. But that's not the case here. And what the Supreme Court teaches us is that first we have to look at how a statute is applied to a specific defendant's conduct. And a defendant to whom a statute can be constitutionally applied may not, except for in extreme circumstances, challenge it on a factual ground either on over breadth or vagueness grounds, which is why I think I started by talking about Judge Watford and what you said about conduct. We need to ground the facts that are here, and that's all that this Court needs to do. Well, let me, I guess the thing that worries me about following the rationale that I articulated is that there does need to be some kind of limiting principle, it seems to me. And I'd be interested in hearing how you think we should articulate that ourselves. Well, I think, I mean, let me preface it with this question, though. Do you contend that the, I mean, there's unquestionably speech involved in this crime. Unquestionably. Graber mentioned there are all sorts of crimes that are committed through speech. But what category of unprotected speech do you say that Mr. Ossinger's speech fell into? Your Honor, it can fall into a number of categories, but the one that I started my brief with, this is the one that the Petrovic Court, the Schrader Court, the Sayre Court, District Court, as well as on the telephone harassment statute, the Fowker Court, the Erickson Court, all of these courts from six or seven circuits that have relied upon this, is speech that is integral to criminal conduct does not receive protection. Got it. So let's define how we're supposed to, how are we supposed to define the conduct here? The conduct here in the facts of this case, and I struggled with this a little bit myself when I started to think about it, and then it became somewhat clear, is certainly an individual text message is speech. One text message, right? A posting to a blog speech, right? But when you look at the arc of conduct, and that's how the indictment is drafted, how the proof came out at trial, and how the statute is drafted, when you look at the arc of the conduct or the course of conduct, you have not only a defendant who sent a dozen or so threatening, nasty, crude, however you want to describe them, text messages that contained language that, you know, I'm reluctant to even repeat here, and I don't need to, and I don't need to. I'm not going to do it, right? And nobody wants to hear it here, right? Not only started with that, directed to the victim, directly to her, he then invaded every aspect of her life. He sent e-mails to three of her work colleagues, one of which was her boss, that contained not only, I would say, defamatory statements, but also inciting them to have sex with her for money. We got it. But help us with, forget about the facts of this case. Sure. All right, let's say we were to rule in the government's favor. I'm thinking about how are we going to articulate the limiting principle that concerns me. And so just you're right that an individual e-mail, an individual text message, clearly that's speech. But is your theory that at some point when you aggregate together enough, just if you look at each individual act on its own, it might be fully protected speech, but somehow when you aggregate them together in a particular pattern, it becomes conduct? Is that your theory? I think that's precisely right, Your Honor. And I think that's borne out in the various telephone cases where there were, you know, telephone calls 50 to 60 times a day that on their own, a single one, two, three telephone calls are speech and are not criminally actionable. But when you engage in conduct that is a pattern or is a course of conduct, as described in the statute in Section 2266, has a definition of it. It doesn't help much. It's pretty thin. Well, and I think it's difficult to pull it out from the facts of the case because the course of conduct will necessarily be grounded in what the conduct is. Right. So from case to case, the conduct is going to vary. But we've got to articulate some kind of a general principle that's going to control a lot of future cases. And so, I mean, is there some formulation that you've come up with that you think would be helpful? Well, I don't think it's any different than what the Supreme Court said in Giboney, which is that speech that is integral to criminal conduct is not protected. In this case, that criminal conduct is not protected. Isn't there necessarily in this statute a second aspect beyond the integral to the criminal conduct or course of conduct, and that is that both the intent and the effect are essentially menacing the other person? In other words, you couldn't prove this with a course of conduct of sending flowers and telling. . . I mean, you might have a different statute that would deal with that, but you couldn't convict someone under this statute if each communication said, good morning, I hope you're having a nice day. Certainly not. So it's both that it's integral and that the communications themselves contain a menacing aspect, both factually, you know, both at the intent end and at the receiving end. So isn't that also a limiting principle here? It is a limiting principle, and I think it's sort of helpful. . . And thank you for that. It's somewhat helpful to look at the only two cases that have gone the other way, which are the Cassidy case and the Popa case. The Popa case was a D.C. Circuit case where the defendant made threatening phone calls to the now Attorney General Eric Holder, who was then the U.S. Attorney in the District of Columbia, and commented not only about him personally but also about his conduct as the U.S. Attorney. And the D.C. Circuit held, well, that's political speech. Well, the result here might in fact be different if this person were, say, you know, running for president or were somehow a public figure, but that's not. . . We can carve out, presumably, that that's a whole different ballgame. I think that's right. And so I do think that one of the limiting principles is potentially, in a given case, where it is about a private figure on a matter of private concern that has no newsworthy element that the First Amendment is designed to protect the need for debate to, you know, bring forth important issues to society, that that is one limiting principle. And that is clearly where the Popa court and the Cassidy court sort of wrested their analysis. The same thing with Cassidy. It was a public religious figure, and the defendant was commenting on blogs about her conduct as that religious figure. And both of those courts said, well, these are public figures, so therefore the speech about them is protected. And so then we need to analyze it under O'Brien, the Supreme Court's O'Brien test, which we don't even need to get to here. I think, Your Honor, Judge Graber, pointing out the other elements of the statute here are really helpful, not only. . . Certainly there's speech here, but the speech is sort of integral to conduct. But then on top of that, we have all these other narrowing principles that are embedded in the statute, probably because Congress was aware that those limiting, narrowing principles insulated from constitutional challenges. The intent element, not just a general intent, specific intent to actually cause the harm, whether it's to harass, injure, kill, cause substantial emotional distress. It's harassing, substantial emotional distress in this case, but also the actual effect to the victim. And the court was discussing that actual effect to the victim with opposing counsel. You know, that was proven here. That's not going to be the case or the situation in every single case. Indeed, the Sayre Court, which is a district court, sort of had a nice discussion toward the end of the opinion. I remember the pin site about how many of the situations that the defendant here talks about, you know, postings on Amazon.com for, you know, challenging businesses and, you know, postings about political figures. In those situations, those individuals put themselves out there and are used to that public comment about them. They're less likely to have that. They're more likely to have a thick skin, less likely to be substantially emotionally distressed by a public comment about them. But where you have an ex-girlfriend victim who never sought the public eye, and graphic photos and nasty things about her are sent to every realm of her personal and professional life, that's simply not constitutionally protected. That's what every single court to have addressed this, and that is many courts, I think in five or six circuits, has concluded. I see no reason for this court to depart from the reasoning there. It appears the Court has no further questions on that. I don't know if you want me to reach the other issues on acceptance or substantive reasonableness. It's up to you. It's entirely up to you. Sure. I think I'll get to the acceptance of responsibility point. The defendant asserts that the district court clearly erred by concluding that he had not accepted responsibility. You know, I'm aware there are cases in this circuit, and certainly the guidelines provide, that a defendant who proceeds to trial to preserve constitutional claims may indeed receive the benefit of acceptance of responsibility. I don't challenge that, but I think that makes sense. Am I remembering right that there was some suggestion that the defendant was told by his lawyers that in order to preserve your constitutional challenges, you can't accept the plea agreement you guys offered? The defendant said something to that effect during the sentencing colloquy. There hasn't been any flushing out of that. I don't know if that would be flushed out in some sort of collateral proceeding. I can't. All I know is what he said there in the record. But I would submit that despite that, the range of facts here from pre-indictment or, yeah, from pre-indictment all the way to sentencing show that he just never accepted responsibility. Even after that statement, well, it wasn't after, but, you know, he described his conduct as childish. I don't remember how defense counsel characterized it when he got up here. It was inappropriate and crude. That is not what happened here. It wasn't. It was childish, but it was so much more than childish. So, counsel, before you run out of time, I wanted to ask you about the sentencing disparity issue. Sure. It appears that, you know, our decision in United States v. Trujillo says that the district court has to address any disparity between sentences that are known. What's your response to that? Well, my response, I guess, is twofold. One is that in Treadwell, this Court said that it is not a sentencing disparity to simply compare one defendant sentenced at one time on different facts with a different record to another defendant sentenced of the same statute, but different facts, different history. Different question. United States v. Trujillo said that the court must address a non-frivolous sentencing disparity argument. Right. So I'm not saying that the bottom line decision has to be one way or the other, but what if the court fails to address it at all? Does that warrant a remand? I don't think so, and I think the key there is non-frivolous. I think here when you compare the public information that we have about Mr. Barrett, the need to avoid unwarranted sentencing disparities is to avoid unwarranted disparities for similarly situated defendants with similar records. That is not what the Barrett case represents. Mr. Barrett was in criminal history one. This defendant was in criminal history two, I believe one of which. So your bottom line is that the sentencing disparity argument in this case was frivolous. I think that's right. And I would also point out to the court that if you read Judge Wright's sentencing colloquy, it is incredibly thorough. He didn't discuss the disparity. He did not discuss the disparity, but I don't think that he needed to. And also where I know I'm over my time. Yeah. You can answer my question. You can answer my question. All right. Thank you, counsel. And, Mr. Sanior, you have a substantial rebuttal time remaining. Thank you, Your Honor. Could you address the disparity argument at some point, please? Yes, I can. In fact, I can do it now. I think there was significant facts when I started to do the sentencing memorandum on this case. When you're looking at four years, or close to four years, I think we have 46 months here, they were typically cases, and there weren't very many. I think there was a case in West Virginia, Ohio, Kentucky, somewhere around there, and another case also back east, and the Barrett case. My primary concern on the disparity issue is whether or not the district court was required to address it, and whether we must remand if the district court, in view of the fact that the district court did not specifically address the disparity argument. I believe that if the district court did not take that up, that, yes, it has to be remanded back to them. Why isn't it a frivolous argument, though, in view of the many differences between this case and Barrett? You had not only the different criminal history score that was referred to, which has nothing to do with the present crime, but only with the individual defendant. You had also a difference in the level, because in that case, there was an acceptance of responsibility, and for the purpose of this question, I want you to assume that that was permissibly denied here, and you had, from at least my reading of it, much less severe and much less prolonged conduct against someone who arguably was more of a public figure. So why aren't those differences so enormous that there's just nothing to that argument for the district court to have to deal with? My belief is in the Barrett case, the Barrett case was more than one individual. I think it mentioned 17 different individuals where he was actually physically crossing state lines to harass or menace or intimidate these people, and also by, I mentioned seven or 18 individuals crossing state lines, a prolonged period of time. It was 18 months, whereas in this case with Mr. Olsinger, I think it was two or three days. It started somewhere late in March on the text messages, and it concluded sometime on the following Monday, I believe, so it was a much shorter period of time, and it's less individuals. It's one individual versus 17, 18 individuals, and he never crossed state lines. I'm not sure what that has to do with anything in terms of the statute or the severity of the sentence. Metaphysically, he crossed state lines. Virtually, yes, he crossed state lines, right, but in terms of physically. The other case, the Barrett case, did the defendant there get an enhancement for violating a restraining order? I'm not certain, but we didn't have a restraining order in the Olsinger case. In the Olsinger case, the restraining order came down in May. I think it was like May 4th. I thought your client got a two-level increase for that, no? In this case, no? Maybe I'm wrong on that. I'm not. I don't believe so. Okay. Okay. If it had, then that was wrong, too, because, in fact, the restraining order did come down in May. The activity happened in March, late March, so the restraining order was much later. In regards to the rebuttal, I think my colleague here hit it right on the head, that the substantial emotional distress could vary from case to case. If you find another victim, you know, you could have the same conduct. It would be substantial for some victims, moderate for others, and little or no emotional distress, depending on the individuals. And I think here you have to have some type of notice, and you have to have that defined, and it's just not defined. Thank you, counsel. Thank you. The case just argued is submitted. We appreciate both counsel's presentations.
judges: Graber, Rawlinson, Watford